## Gulf Pipe Line Company v. J. M. Brymer.

Decided January 27, 1910.

**1.—Negligence—Pipe Line—Escape of Oil—Charge.**

In an action for injury to plaintiff's land and crops by oil negligently permitted by the proprietor of a pipe line to escape therefrom upon the land, it was not proper to instruct a verdict for defendant on the ground of lack of evidence of negligence, in the construction and maintaining the pipe line, where the pleading and proof also presented an issue as to defendant's negligence in failing to prevent the oil from coming onto plaintiff's land after its escape from the pipes.

**2.—Negligence—Pleading—Res Ipsa Loquitur.**

Where plaintiff pleads specifically the acts of negligence by defendant relied on, he must prove such negligence and can not rely on a general inference of negligence from the happening of the injury under the doctrine res ipsa loquitur.

**3.—Same.**

Where the inference of defendant's negligence from the happening of the accident can be referred as well to a negligent act or omission not pleaded as to the specific negligence alleged, the maxim res ipsa loquitur is not applicable.

**4.—Damages—Injury to Crop and Soil.**

The measure of damages for injury to grass and cornstalks on plaintiff's land was the value of the things destroyed; that for injury to the turf and soil the difference in value of the land before and after the injury, irrespec-

tive of the value of the grass, etc., destroyed. See charge on subject held to permit recovery of double damages.

Appeal from the District Court of Hopkins County. Tried below before Hon. R. L. Porter.

*D. Edward Greer* and *Templeton, Craddock, Crosby & Densmore,* for appellant.—Where a plaintiff's cause of action is grounded solely on alleged negligence, and the plaintiff in his opening proof adduces no evidence of negligence on the part of the defendant, as claimed in his petition, the court should grant a motion to instruct the jury to find for the defendant. Lindsay v. Murphy, 48 S. W., 532; Marchand v. Gulf, C. & S. F. Ry. Co., 20 Texas Civ. App., 1; Berry v. Osborn, 52 S. W., 624; Washington v. Missouri, K. & T. Ry. Co., 36 S. W., 779; Joske v. Irvine, 91 Texas, 574; Umscheid v. Scholz, 84 Texas, 269; Texas Loan Agency v. Fleming, 92 Texas, 464.

Where a plaintiff's cause of action is predicated solely on alleged negligence and the evidence fails to show any negligence as charged in the petition, the court should charge the jury, when requested so to do, peremptorily, to bring in a verdict for the defendant. Same authorities; Texas & Sabine Ry. Co. v. Meadows, 73 Texas, 32.

Where the evidence on any given issue made by the pleadings, is insufficient and utterly fails to sustain the issue, it is error for the court to refuse to take such issue away from the jury, when so requested by special charge. St. Louis S. W. Ry. Co. v. Groves, 44 Texas Civ. App., 63; Missouri, K. & T. Ry. Co. v. Plunkett, 103 S. W., 663; Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 117; Shulz v. Tessman, 92 Texas, 491; El Paso & N. W. Ry. Co. v. McComas, 72 S. W., 629; Galveston, H. & S. A. Ry. Co. v. Sullivan, 42 S. W., 569; McCormick Machine Co. v. Mays, 33 S. W., 884; Western U. Tel. Co. v. Drake, 29 S. W., 920; Missouri Pac. Ry. Co. v. Peay, 20 S. W., 59; Parks v. Worthington, 39 Texas Civ. App., 421; Gulf, C. & S. F. Ry. Co. v. Archambault, 94 S. W., 1108.

Where a public service corporation having the right of eminent domain has acquired the right of way over lands in a lawful manner, and has constructed its pipe line with due care as to the selection of materials and construction of the line itself on the right of way, and has exercised all due and proper care in operating said pipe line for the conveyance of oil for the public, it is not liable if oil escapes from said pipe line, notwithstanding its exercise of due and proper care in the above respects, and injures lands contiguous thereto, and such a common carrier owes no duty to such landowner to follow up the oil so escaping without any negligence on its part, and to destroy the same, and a failure to do so is not negligence; especially if the burning of oil would destroy other property such as bridges across the stream. Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 120; Galveston, H. & S. A. Ry. Co. v. Chittim, 31 Texas Civ. App., 40; Kinney v. Hannibal & St. L. Ry. Co., 70 Mo., 256; Missouri Pac. Ry. Co. v. Donaldson, 73 Texas, 128.

*C. E. Sheppard,* for appellee.—Where a plaintiff's cause of action

is based solely upon alleged negligence and he is not in possession of the means of proving such negligence, but the defendant is in possession of the means of disproving such negligence on its part and fails to do so, then the law presumes the existence of the negligence when the plaintiff shows that the injury happened and the damages resulted therefrom as alleged by him, and the facts proven by appellee in the opening of this case bring it within this rule. Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 13; International & G. N. Ry. Co. v. Timmerman, 61 Texas, 660; Galveston, H. & S. A. Ry. Co. v. Horne, 69 Texas, 643; Scott v. Texas & P. Ry. Co., 93 Texas, 625; Washington v. Missouri, K. & T. Ry. Co., 90 Texas, 314.

Where a pipe line belonging to a corporation breaks without fault on its part, and the oil that is being transported through such line begins to escape through such break, it then becomes the duty of such pipe line company to use ordinary care to prevent such escaping oil from spreading in such a manner as to damage other property, and a failure on its part to use such care constitutes actionable negligence. Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 120.

The fact that the pipe did break was sufficient to allow the jury to determine as to whether it broke from negligence or whether the employes of appellant had used ordinary care. Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 120; Scott v. Texas & P. Ry. Co., 93 Texas, 625; Gulf, C. & S. F. Ry. Co. v. Baugh, 43 S. W., 557.

WILLSON, CHIEF JUSTICE.—About November 15, 1907, appellee owned a tract of land situated on Mitchell Creek, in Hopkins County, and appellant owned and operated in carrying crude or unrefined oil from Watkins, Oklahoma, to Sour Lake, Texas, a pipe line crossing said creek at a point about three miles above appellee's land. On the day mentioned, and again on November 17, 1907, oil escaped from the pipe line and flowed into the creek and low places near same. On the day last mentioned, as the result of rains falling in its locality, the creek overflowed, washing oil which had escaped from the pipe line down to and over portions of appellee's land, whereby, appellee claimed, the soil thereof was injured and rendered less productive, and whereby, he also claimed, grasses, etc., thereupon, and the sod and turf thereof, were destroyed. In bringing his suit to recover damages he claimed to have suffered and to aggregate the sum of $978.50, appellee alleged it to be a fact known to appellant that such oil, if allowed to run or stand upon land like his would injure same and growths thereupon, and in his petition further alleged that, "although knowing of said properties and effects of said oil upon such soil and growths, the agents and servants of the defendant, in control of and operating and maintaining said pipe line, so negligently operated and maintained the same, and the same had been so negligently constructed by the defendant out of such inferior material and in such negligent and careless manner, at said point where it crossed said Mitchell Creek and said bottom lands adjacent to it, that the same was, by reason of said negligence in its construction, maintenance and operation by the agents and servants of defendant, caused to burst and come apart so as to allow and cause said oil to run out

into said creek and its bottom lands at said point where the same is crossed by said pipe line, on the south side of said creek, and to negligently cause said oil to so run for several hours thereafter in great quantities, sufficient to cause the same to collect and stand in the bed of said creek and the low places in the bottom thereof, where the defendant negligently permitted the same to so collect and stand; that very soon thereafter, and while the said oil was so standing in the bed of said creek, in the low places in the bottoms adjacent thereto and adjacent to plaintiff's said lands, there came a rain and overflow in the neighborhood, which caused said creek to overflow its banks and the water to run over the bottom adjacent thereto, and over said thirty-six acres of cultivated land and ten acres of pasture land above described, as the same was accustomed to do under like circumstances, all of which was well known to the defendant, its agents and servants, or could have been known by the use of ordinary care, and caused said oil to be spread over the surface of the ground and the vegetation thereon of said forty-six acres of plaintiff's land in the tract above described." In his said petition appellee further alleged that appellant "knew, or by the use of ordinary care could have known, that said creek would overflow and said oil be caused to spread upon said lands and crops, when it negligently caused or allowed the same to escape from its said pipe at the time and place and in the manner that it did, as alleged herein, and when it allowed said oil to stand in the bed of said creek after it so escaped thereto, and he says that by the use of ordinary care in the construction, maintenance and operation of said pipe line at said place, by the defendant, said oil would not have flowed from said pipe line, and would not have been allowed to stand in said creek and overflow plaintiff's said lands, and that the damages herein complained of would not have occurred." In a trial amendment to his said petition appellee further alleged as follows: "That in addition to the negligence of the defendant, as alleged in plaintiff's said amended original petition, said defendant was further negligent in the construction, maintenance and operation of its said pipe line at the time and place as complained of by plaintiff in said amended petition, in that in laying and constructing said pipe line at the point where it broke, as alleged by plaintiff, said defendant negligently coupled two joints of its pipe in an uneven and unlevel and unskillful manner, so that the same was weak at said point and would not stand the ordinary pressure of the oil as the same was conveyed through it at said point, and negligently maintained the same in said condition to the time that it bursted as alleged in said petition; that said defendant was also guilty of further negligence in forcing oil through said pipe line at said point at said time with too great a pressure, so great that said pipe would not stand the same at said point, but bursted under it, as alleged by him in said petition; and was further negligent in making its construction at said point in such a weak manner and out of such weak and inferior material that the same would not withstand the pressure of the oil as it was conveyed through the same at said point and at said time, and that by reason of said negligence as above alleged, together with that alleged in plaintiff's said amended petition,

the same was caused to burst as alleged therein, and to do the injury and damage at the time, place and in the manner and to the amount as set out in said petition." In its answer, after denying the allegations of the petition, appellant alleged that as a common carrier and public service corporation it was authorized by law to construct, maintain and operate its pipe line; that it had acquired and held the right of way occupied by it through Hopkins County in the manner provided by law; that it had exercised due care in selecting the material used in the construction of its pipe line, and in constructing and afterwards maintaining and operating the same; that its said pipe line was in fact in good order and condition, and then further alleged as follows: "That said pipe was necessarily and properly placed underground where it could not be inspected, and defendant kept constantly informed as to its condition, and if there was any defect in the pipe at the place where the alleged break occurred the same was latent, and under the surrounding conditions was not discoverable by defendant by the exercise of due and proper care on its part; that defendant had no reason to anticipate any such break occurring, and had taken all proper precautions to guard against such breaks and the consequences thereof; that if any such break occurred as that alleged, and plaintiff has been damaged in any of the particulars alleged, which defendant denies, the same was due to inevitable accident, and happened in the course of the proper conduct and operation of defendant's pipe line and business, and the damages resulting from and incident to such break occurring are not recoverable in such a suit as this under the allegations of plaintiff's petition."

On the measure of damages the court instructed the jury as follows: "7th. If you find for plaintiff the measure of damages will be as follows: The measure of damage, if any, for the destruction of grass and cornstalks upon said land is the reasonable cash market value of such grass and cornstalks at the time and place the same was so destroyed, if they were, and the measure of damages for the destruction or injury to the grass turf and soil on said premises, if there was such destruction or injury, is the difference, if any, between the cash market value of said lands upon which such grass turf and said soil were situated just before they were destroyed or injured and just after they were destroyed or injured, if they were destroyed or injured."

The trial resulted in a judgment in appellee's favor for the sum of $223.50, interest and costs.

*After stating the case as above.*—On the theory, it seems, that if plaintiff was entitled to recover at all it must have been because, and only because, appellant had been guilty of negligence in the construction and operation of its pipe line, on the ground that there was no evidence whatever that it had been so negligent, appellant asked the court to peremptorily instruct the jury to find in its favor. If it should be conceded that the maxim *res ipsa loquitur* had no application to the case, and that proof merely that the pipe broke, and that oil flowed therefrom and on to appellee's land and injured it, did not raise an issue as to negligence on its part in the construction and operation of the pipe line, the court properly refused to instruct the

jury as so requested, because it ignored an issue made by the pleadings and the evidence as to appellant's liability, notwithstanding it may not have been guilty of negligence in constructing and operating its pipe line, if it was guilty of negligence in that it failed to use ordinary care after the oil escaped to prevent an injury thereby to appellee's land and pasturage thereon. In Missouri Pac. Ry. Co. v. Platzer, 73 Texas, 117, it was held that, notwithstanding the absence of negligence on the part of a defendant in kindling a fire on his own premises, if it spread to adjoining premises and he should fail to use ordinary care to extinguish it, he would be liable for injury resulting from it to the owner of such premises. The ruling in that case has repeatedly since been followed by the courts of this State (Houston & T. C. Ry. Co. v. Anderson, 44 Texas Civ. App., 394, 98 S. W., 440; Galveston, H. & S. A. Ry. Co. v. Chittim, 31 Texas Civ. App., 40, 71 S. W., 296; Dillingham v. Whitaker, 25 S. W., 724; Rost v. Missouri Pac. Ry. Co., 12 S. W., 1133), and we think the principle furnishing the basis for it is applicable in a case like this one, and that the court did not err in refusing to so peremptorily instruct the jury.

Appellant contended that the evidence failed to show any negligence on its part (1) in the selection of material with which to construct its pipe line; (2) or in constructing its said pipe line at the point where it broke; (3) or in the operation of same at the time it was broken; (4) or in connection with the escape of the oil from its pipe line, and requested the court to instruct the jury not to consider questions as to its negligence in those particulars. If the maxim *res ipsa loquitur* should be applied to the case as made by the pleadings, the requested instructions we think were properly refused. But we are of the opinion that that maxim was not applicable, because in his pleadings appellee charged, as the negligence he relied upon, specific acts and omissions on the part of appellant. In Kennedy v. Metropolitan St. Ry. Co., 107 S. W., 17, it was held by the Kansas City Court of Appeals that, "where a plaintiff states a case of specific negligence, he abandons his right to the presumption arising from the rule of *res ipsa loquitur,* and voluntarily takes upon himself the burden of proving the specific negligence charged." A similar ruling was made by the same court in Tighe v. Atchison, T. & S. F. Ry. Co., 107 S. W., 1035, and by the Supreme Court of Missouri in Feary v. Metropolitan St. Ry. Co., 62 S. W., 458; McGrath v. St. Louis Transit Co., 94 S. W., 874, and Price v. Metropolitan St. Ry. Co., 119 S. W., 938. In the case last mentioned the court said that pleading specific acts of negligence "rises to the dignity of an admission of record that she (the plaintiff) knew the cause of the accident. Not only so—she points out specifically the negligent acts, and must prove them, and recover, if at all, upon the negligent acts pleaded." The same ruling seems to have been made by the Court of Civil Appeals for the Fourth District in Lone Star Brewing Co. v. Willie, 52 Texas Civ. App., 551, 114 S. W., 191, where Neill, J., said: "This is not a case where the dictrine of *res ipsa loquitur* applies; for the plaintiff, having specifically alleged the acts of defendant's negligence, can not make out a *prima facie* case without direct proof of actionable negligence, but must prove the acts of negligence which

he averred, and that such negligence was the proximate cause of his injuries." In its opinion on a motion for a rehearing, the court explained that it did not mean by the use of the words "direct proof" that negligence specifically alleged could not be shown by circumstantial evidence, but we do not understand them to have meant by such explanation that they receded from the opinion they had expressed, that the maxim did not apply where the negligence relied upon is specifically alleged. In his work on Negligence, Judge Thompson states the rule to be that the plaintiff "is not deprived of his right to rely upon the doctrine of *res ipsa loquitur* by reason of having averred the particular act of negligence complained of, where such act is the one which the legal inference of negligence tends to establish," citing as authority for the rule, as he states it to be, Gallagher v. Edison Illum. Co., 72 Mo. App., 576, a case to which we have not access; 6 Thompson on Negligence, sec. 7643, p. 627. In Louisville & S. I. Traction Co. v. Worrell, 86 N. E., 78, the Appellate Court of Indiana followed without comment the rule as stated by Judge Thompson. An examination of the case cited in the 72 Missouri Appeals might disclose that it is not in conflict with the later cases from that State, cited above. But if it is, it should be regarded as overruled by them. If the rule is as it is stated to be in the Kennedy and Price and other cases cited above, it is clear the doctrine in question has no application to the case before us. And we think it is not within the rule, even as it is stated by Judge Thompson to be. It was shown that pieces of iron or steel piping, threaded at their respective ends, were used in constructing the pipe line, and that it was constructed during very warm weather, by joining consecutively, by means of a threaded collar, the pieces of piping one to another. The piping so joined was then placed in a trench prepared for the purpose, varying in depth from two to four feet, according to the lay of the land, and covered with dirt. It was shown that the oil escaped during a spell of cold weather, and the testimony tended to show that it escaped because the threading holding together sections of the piping at the place where it escaped had been broken, permitting such sections to separate and pull apart from each other. Witnesses testified that the separation of the sections was due to the effect on the iron or steel of the cold weather; that the piping before same was connected in the construction of the line had become expanded by the then prevailing heat, and as the effect of the cold weather prevailing when the oil escaped the piping had so contracted as to shorten and cause the sections to pull apart at the place where the oil escaped. In specifying the negligence he relied upon as entitling him to recover the judgment he sought, appellee did not charge as negligence on the part of appellant that it constructed its pipe line without reference to the effect thereon of variations in the temperature of weather reasonably to be anticipated in the locality where it was situated. The "legal inference of negligence" from an application of the maxim in question, "tends to establish" negligence in the particular we have just discussed as strongly as it does in any of the particulars specified in appellee's pleadings. We have therefore a case where the legal inference of negligence arising from the happening of the accident and

consequent injury, "where the defendant owes to the plaintiff a duty to use care, and the thing causing the accident is shown to be under the management of the defendant or his servants, and the accident is such that in the ordinary course of things does not occur if those who have the management or control use proper care" (29 Cyc., 591), may as reasonably be referred to an act or omission of the defendant not pleaded as it can be to its acts or omissions pleaded. In other words, the "legal inference tended to establish" not only the "particular act of negligence complained of," but another act of negligence as well, on account of which, because he had not pleaded it, plaintiff was not entitled to recover. Under the rule as stated by Judge Thompson it may be, if a plaintiff's pleadings in a given case should specify as negligence every act or omission of the defendant from which an inference of negligence proximately causing the injury could be deduced, the maxim might be invoked to support the judgment. But when the plaintiff's pleadings fail to make such a specification, and the legal inference of negligence can be referred as well to an act not specified as to one specified, we think the maxim can not be invoked under the rule as he states it.

The seventh paragraph of the court's charge to the jury, copied in the statement made of the case, is attacked on the ground that it did not correctly state the measure of the damages recoverable by appellee, if the finding of the jury should be in his favor. There was evidence tending to show that grass and cornstalks on the land were rendered valueless as pasturage; that the turf of the grass was killed, and that the soil was rendered less productive, more difficult to cultivate, etc. The measure of damages for grass and cornstalks destroyed was the market value of same at the time and place when and where same were destroyed; and the measure of damages to the land by reason of injury to the turf, etc., was the difference in the value of the land immediately before and immediately after the oil injured it, not taking into consideration the value of the grass and cornstalks. Texas & P. Ry. Co. v. Prude, 39 Texas Civ. App., 144, 86 S. W., 1047; Galveston, H. & S. A. Ry. Co. v. Chittim, 31 Texas Civ. App., 40, 71 S. W., 297. The instruction was misleading, and therefore erroneous, we think, in that it might have been construed by the jury as authorizing a double recovery on account of the grass and cornstalks. They might have construed it as directing them to find as the damages to the land the difference between its value with the grass and cornstalks uninjured on it immediately before it was injured, and its value immediately thereafterward, when the grass and cornstalks had become valueless.

Such of the assignments in the brief as present questions likely to arise on another trial, and which have not in effect been disposed of by what has been said, are overruled.

The judgment is reversed and the cause is remanded for a new trial

*Reversed and remanded.*